**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BROOKE HEAD,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action: CV-23-295** |
| | * | |
| **ALABAMA COMMUNITY COLLEGE** | * | **JURY TRIAL DEMANDED** |
| **SYSTEM; COASTAL ALABAMA** | * | |
| **COMMUNITY COLLEGE;** | * | |
| **GOVERNOR KAY IVEY, J.E.B.** | * | |
| **SHELL, JOHN MITCHELL, VALERIE** | * | |
| **GRAY, BRITTON LIGHTSEY,** | * | |
| **GOODRICH ROGERS, RON** | * | |
| **HOUSTON, LLEVELYN RHONE, TIM** | * | |
| **MCCARTNEY, AND DR. YVETTE** | * | |
| **RICHARDSON, in their official** | * | |
| **capacities as Trustees of the Alabama** | * | |
| **Community College System;** | * | |
| **JIMMY H. BAKER, in his official** | * | |
| **capacity as Chancellor of the Alabama** | * | |
| **Community College System;** | * | |
| **CRAIG POUNCEY, in his individual** | * | |
| **and official capacity as President of** | * | |
| **Coastal Alabama Community College;** | * | |
| **and VINSON BRADLEY, in his** | * | |
| **individual and official capacity as** | * | |
| **Dean of Student Services,** | * | |
| | * | |
| **Defendants.** | * | |

**FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff, Dr. Brooke Head ("Dr. Head"), by and through undersigned

counsel, and for her First Amended Complaint against Defendants Alabama Community College

System ("ACCS"); Coastal Alabama Community College ("CACC" or "the College"); Governor

Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron

Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as

Trustees of the Alabama Community College System (collectively, "the Trustees"); Jimmy H. Baker ("Baker" or "the Chancellor"), in his official capacity as Chancellor of the Alabama Community College System; Craig Pouncey ("Pouncey" or "President Pouncey"), in his individual and official capacity as President of CACC; Vinson Bradley, in his individual and official capacity as Dean of Student Services ("Bradley" or "Dean Bradley") (collectively, "the Defendants") for declaratory and equitable and injunctive relief arising from Defendants' violations of rights guaranteed to Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983.

## Jurisdiction and Venue

1.      The parties to this action reside in and/or are located in and do business within the jurisdiction of this Court.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), 2201, 2202, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).  The Defendants conducted business in the Southern District of Alabama, Southern Division, and this is where acts of discrimination occurred.

## Exhaustion of Administrative Remedies

3.      Plaintiff timely filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission on May 6, 2022, and was issued a Right to Sue Letter on May 10, 2023.  [Attached herewith as Exhibits A and B].  Plaintiff timely filed this action within ninety days of receipt of her Notice of Right to Sue.  Plaintiff has fulfilled all other administrative prerequisites to the filing of this action.

## Parties

4.      Plaintiff Dr. Brooke Head is an adult female resident of Baldwin County, Alabama and of this judicial district.  Plaintiff was employed by the Defendant Coastal Alabama Community College at all material times hereto.

5.      Defendant Alabama Community College System operates and does business in the Southern District of Alabama and is a governmental entity for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

6.      Defendant Coastal Alabama Community College is located in the Southern Division of the Southern District of Alabama and is a governmental entity for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

7.      Defendant Governor Kay Ivey is sued in her official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  She is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

8.      Defendant J.E.B. Shell is sued in his official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  He is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

9.      John Mitchell is sued in his official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  He is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

10.     Defendant Valerie Gray is sued in her official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  She is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

11.     Britton Lightsey is sued in his official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  He is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

12.     Defendant Goodrich Rogers is sued in his official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  He is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

13.     Defendant Ron Houston is sued in his official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama

Community College.  He is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

14.    Defendant Llevelyn Rhone is sued in her official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  She is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

15.    Defendant Tim McCartney is sued in his official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  He is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

16.    Defendant Dr. Yvette Richardson is sued in her official capacity as Trustee of the Alabama Community College System and as such has the authority and is responsible for the supervision, administration, naming, financing, construction, and equipping of Defendant Coastal Alabama Community College.  She is a "person" for purposes of 42 U.S.C. § 1983, and an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(b).

17.    Jimmy H. Baker is sued in his official capacity as Chancellor of the Alabama Community College System and has such has the authority and responsibility for the operation, management, control, supervision, maintenance, regulation, improvement, and enlargement of Coastal Alabama Community College, subject to the approval of the Trustees.

18.    Defendant Craig Pouncey is over the age of nineteen years and a resident of Baldwin County, Alabama.  At all times materials to this action, Pouncey served as President of

Coastal Alabama Community College.  Pouncey is sued in both his individual and official capacities.

19.     Defendant Vinson Bradley is over the age of nineteen years and a resident of Baldwin County, Alabama.  At all times materials to this action, Bradley served as Dean of Student Services of Coastal Alabama Community College.  Bradley is sued in both his individual and official capacities.

**Factual Allegations Common to All Counts**

Head's Employment at College and Initial Harassment

20.     Dr. Head is a 41 year old female.  Dr. Head began working at Alabama Southern Community College in Monroeville, Alabama in June of 2013.  Her job title was initially Retention Specialist but she was given additional job duties and performed additional roles for the college.

21.     In the fall of 2016, the decision was made to consolidate Alabama Southern Community College with two other community colleges to create Coastal Alabama Community College.  Upon the consolidation of the colleges on January 11, 2017, Dr. Head remained in her existing position at the Monroeville campus of the newly created CACC.

22.     In the fall of 2020, Dr. Head was offered the position of Director of Student Development, a newly created position at the College, and required to move to the College's Bay Minette campus and relocate her family to Baldwin County.  Dr. Head began working as the Director of Student Development in early 2021.

23.     The position of Director of Student Development reported directly to Dean Vinson Bradley ("Bradley"), the College's Dean of Student Services.

24.     Dr. Head started facing harassment based on her sex from Dean Bradley soon after she began reporting to him.  She learned that Defendant Bradley had a Dr. Jekyll/Mr. Hyde personality and could switch from screaming at her and other female employees to admiring their work and seeking their favor.

25.     Immediately after starting the new position, Dean Bradley told Dr. Head that the position was created specifically for her because Pouncey found her attractive and wanted to have her on the Bay Minette campus.

26.     Defendant Bradley soon thereafter began threatening Dr. Head, screaming at her, and pounding his fists on his desks while hovering over Head and pointing at her face.  Dr. Head learned that Bradley did this to other women that worked for him but that he did not treat his male subordinates the same way.  Dr. Head also learned that Bradley went as far as to inquire about soundproofing his office because of his behavior.  He regularly locked his door and closed his blinds while meeting with Head and his female employees.  Dr. Head began to only meet with Bradley toward the end of the work day where there was a clear end time and only after notifying other employees in their office that she was meeting with him.

27.     Defendant Bradley made clear that if Dr. Head would be submissive to him and his agenda that the harassing behavior would stop.  Bradley behaved in this manner to tame Dr. Head and put her in her place.

28.     Defendant Bradley regularly called and texted Dr. Head after hours and for inappropriate reasons.  Bradley told Head "I miss you", he told her that short blondes are his type, he commented "Goddamn, look at those titties in that red blouse, let me sit down before you see my crotch."

29.     Dr. Head reported the sexual harassment and Bradley's behavior to Sara Davis ("Davis"), the College's Chief Operating Officer and Bay Minette campus Campus Director, in late February or early March.  Specifically, on March 4, 2021, Dr. Head reported to Davis by text message that she was concerned about Bradley hollering at her and punching his desk and that the mental anguish it caused her forced her to take a day offer to recover.

30.     Dr. Head reported her concerns to Davis because Dean Bradley was the College's Title IX Coordinator responsible for complaints of sexual harassment, the person to whom Dr. Head typically would have reported her complaints.

31.     Davis advised Dr. Head that what she described was a hostile work environment that needed to be reported to the College's Human Resources Department.  Davis also told Dr. Head to rely on her faith but that it was ultimately her word against his.

32.     Davis called Elizabeth Ripp ("Ripp"), then the College's Director of Human Resources, while Dr. Head was in her office.

33.     Ripp immediately walked to Davis' office and met with Davis and Dr. Head.

34.     Davis stepped out of the office to allow Ripp to question Dr. Head about the harassment.

35.     Dr. Head told Ripp that she was scared of retaliation and that she just wanted the harassment to stop so that she could just do her job.  The meeting concluded and Ripp, Davis, and Dr. Head returned to their offices.

The Harassment Against Dr. Head Escalates

36.     The next day, Bradley called Dr. Head into his office and told her that she was a "punk ass" and asked her if she thought that Kathryn Lambert ("Lambert") wouldn't immediately tell him everything.

8

37.     Dr. Head tried to downplay the situation and get out of Bradley's office as quickly as possible.

38.     Lambert worked in Human Resources and was a confidante of Dean Bradley. When asked why she told Dean Bradley about the meeting, Lambert replied that she was trying to protect Bradley from himself.

39.     The work environment remained hostile following Dr. Head's report to Davis and Ripp.

40.     Bradley frequently reminded Dr. Head that she had reported him and that he was aware of the reporting. Bradley, who was then completing a doctorate, instructed Dr. Head to write his dissertation for him.

41.     Bradley also told Dr. Head that her husband, the College's Athletic Director, was a "piece of shit" and threatened to "beat his ass with a baseball bat."

<u>Defendants Failed to Address Dr. Head's Complaints and Properly Supervise Bradley</u>

42.     Defendant Alabama Community College System has an affirmative duty to operate and supervise its community college campuses and to ensure that they and their employees follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of its employees and the ACCS' EEO policies and procedures.

43.     The Defendant Trustees of the Alabama Community College System have an affirmative duty to operate and supervise Alabama's community college campuses, including Defendant Coastal Alabama Community College, and to ensure that the colleges and their employees follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of ACCS employees and the ACCS' EEO policies and procedures.

44.     Defendant Jimmy H. Baker, as Chancellor of the Alabama Community College System, has an affirmative duty to operate and supervise ACCS community college campuses and to ensure that they and their employees follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of its employees and the ACCS' EEO policies and procedures.

45.     Defendant Coastal Alabama Community College has an affirmative duty to operate and supervise its campuses and to ensure that its employees follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of its employees and the College's EEO policies and procedures.

46.     Defendant Pouncey, as President of Coastal Alabama Community College, has an affirmative duty to operate and supervise CACC and to ensure that its employees follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of its employees and the College's EEO policies and procedures.

47.     Defendant Bradley, as Dean of Student Services at Coastal Alabama Community College, has an affirmative duty to supervise those employees who report to him and to ensure that that those employees follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of its employees and the College's EEO policies and procedures.  Further, Bradley himself is to follow federal, state, and local laws and regulations, including those laws related to protecting the civil rights of its employees and the College's EEO policies and procedures.

48.     Defendants have failed to protect those employees, including Dr. Head, for whom they have an affirmative, statutory and constitutional duty to protect and failed to monitor and supervise those who report to them.

49.    Dr. Head repeatedly notified President Pouncey about Pouncey's behavior and threats.

50.    Pouncey failed to take Dr. Head seriously.  Pouncey simply saw Dr. Head as an emotional woman.  Pouncey would hug Dr. Head, would rub her shoulders, and refer to her as "darling."  Pouncey did not hug male employees, rub the shoulders of male employees, nor did he refer to them as darling.

51.    Defendant Bradley himself told Dr. Head that Pouncey would make crude comments about Head's "titties" and "sexy legs" after each time Head met with Pouncey.

52.    In particular, Bradley told Head that following Bradley's reporting of an unrelated racial slur from another employee to Pouncey, Pouncey commented to Bradley that Dr. Head's lips were quivering and she was shaking but that "those titties and legs were looking fine."

53.    Later that spring, one of Dr. Head's subordinates, Lee Barrentine ("Barrentine"), reported to her that he was concerned that Dennis Fuqua, the Brewton campus' Campus Director, was discriminating against other employees and students.  Barrentine told Dr. Head that he did not feel comfortable going to HR because he feared retaliation and being terminated.

54.    Dr. Head reported Barrentine's concerns to Dean Bradley.  Bradley downplayed Barrentine's concerns and did nothing.

55.    A few weeks later, Dr. Head's husband, Daniel, the College's Athletic Director, was in a meeting with Fuqua in which Fuqua made discriminatory comments.  This was not the first time Fuqua had made such comments to Daniel.

56.    Dr. Head learned of Fuqua's comments from Daniel and again reported this to Dean Bradley.

57.     This time, Bradley reported Dr. Head's concerns to HR and the College's President, Craig Pouncey.

58.     Pouncey immediately called Dr. Head into his office.

59.     Pouncey told Dr. Head that he "just had to talk Bradley off of a ledge." Pouncey told Dr. Head that Fuqua's behavior and comments were common in the South and common in any workplace. He told Dr. Head to go back to her office "business as usual" and that he would handle it.

60.     Pouncey also told her that she should never go to HR and that she should directly go to him with any concerns of discrimination so that he "could get ahead of it."

61.     Pouncey was more concerned with Dr. Head's titties and legs than the allegations of civil rights violations at the College.

62.     Pouncey "handled" it by calling Dr. Head's husband, Daniel, that same night on his personal cell phone.

63.     Pouncey told Daniel to "take care of your wife." Pouncey continued saying that "I am the king of sweeping shit under the rug."

64.     Despite widespread allegations of harassment and discriminatory behavior, Pouncey failed to address the allegations made by Head and other female employees of the College. Instead, Pouncey adopted a culture of tolerance born from written and unwritten policies and procedures designed to sweep those allegations under the rug.

65.     Pouncey adopted and enforced policies and procedures that protected Defendant Bradley. Whether it was for a lack of training or a lack of supervision from ACCS, the Trustees, and the Chancellor, the culture of tolerance for harassment and discrimination persists at the College.

66.     Defendants ACCS, its Trustees, and Chancellor Baker have failed and continue to fail to supervise and monitor Pouncey.  Despite widespread abuse and harassment by Bradley and the adoption of policies and procedures that facilitated the ongoing harassment, the Defendants ACCS, its Trustees, and Chancellor Baker failed to correct the alleged deprivation of rights.

67.     Like Pouncey, they have shown a deliberate indifference to Dr. Head's constitutional rights.

68.     A few days after Bradley reported Fuqua's racist comments to Pouncey, Bradley and Pouncey drove together to the College's Monroeville campus for the campus graduation.

69.     When he returned, Bradley told Dr. Head that during that drive, Pouncey told Bradley to shut Dr. Head up and that if Bradley did so, Pouncey would protect him.

70.     Defendant Pouncey made clear that he would look out for Defendant Bradley if Bradley would not pursue claims against Fuqua.

71.     Bradley told Dr. Head that he was going to drop the investigation into Fuqua and instructed Dr. Head to let it go.

72.     Days later, Kathryn Lambert, then the acting head of HR, called Dr. Head and told her that nothing was going to come of the Fuqua claims.  Lambert blamed Dr. Head and told her that it was Head's fault it was dropped based of the way that Head had reported it to Bradley.

Retaliation Against Head Grows

73.     A few weeks after the call from Lambert, Dr. Head received a call from Michelle Bugos, the College's new Director of Human Resources, to tell her that HR needed to see her.

74.     Dr. Head met with Bugos and Lambert.

75.     Bugos and Lambert told Dr. Head that employees, including Dean Bradley, had complained about her.  Dr. Head disputed the complaints.

76.     Dr. Head also pointed out that Lambert had earlier leaked Dr. Head's complaints about Bradley directly to Bradley.  Dr. Head made clear that because of HR's failure to properly handle her claims that she was not comfortable with HR.  She also made clear that other employees of the College were also not comfortable with HR.

77.     Dr. Head told Bugos and Lambert that she believed that the complaints were retaliation for reporting Dean Bradley.

78.     Dr. Head also told Bugos and HR that the allegations she made against Bradley were not isolated incidents.  Dr. Head told Bugos that she was afraid every time Bradley came in her office or she went in his office.  Dr. Head routinely told other employees, including Diana McCullough, Charity White, Nicole Evans, Malinda Byrd Murphy, Theresa McClellan, and Katie Chriswell, any time she was going to Bradley's office.  Dr. Head asked them to not lock up or leave for the day until Dr. Head had returned to her office.

79.     Dr. Head reported that Bradley had sexually harassed other female employees at the College but that the other employees were afraid to report it.  Specifically, Dr. Head told HR that Lindsey Byrd, an Advisor at the College, had informed her that Bradley was sexually harassing her and that he had made professional promises in exchange for promotions.

80.     Bugos and her Human Resources Department determined that the allegations that Dr. Head and Dean Bradley had made against one another had merit.

81.     The Defendants' response, however, was less than adequate or appropriate.  Both Dean Bradley and Dr. Head were written up for unprofessional behavior.  Dr. Head was told that it was "business as usual" and that Dean Bradley would remain her supervisor.  Human

Resources told them that it would "mediate" any future disputes between Dr. Head and Bradley and that it would hold weekly meetings between the two of them to repair the relationship. And though Dr. Head made clear her discomfort with being around Bradley, shockingly, Bugos also instructed Dr. Head and Bradley to go in each other's offices each morning and tell the other good morning.

82.    The work environment under Dean Bradley became increasingly more hostile for Dr. Head.

83.    Defendant Bradley was going behind Dr. Head's back and meeting with her direct subordinates in an attempt to stir up discontent and animosity toward Dr. Head.

84.    Employees reached out to Dr. Head to express their concern over the conversations that Bradley was having with them.

85.    Bradley started denying routine requests made by Dr. Head and abusing his authority. In one incident, Bradley refused Dr. Head's request for a team building exercise for professional development for her staff. In his response to Dr. Head's request, Bradley told her the request was denied and that she should now address him more formally as "Dean Bradley."

86.    Bradley removed some of Dr. Head's duties and authority. Bradley began having Dr. Head's subordinates attend meetings with Pouncey and other senior administrators in Dr. Head's place.

87.    On June 16, 2021, Bradley called Dr. Head and spent an hour and a half alternately berating her and then trying to get her to go to the Brewton campus to be with him.

88.    Dr. Head immediately drove to the main campus while on the phone with Bradley and met with President Pouncey. When Dr. Head arrived, Pouncey commented that he was aware that Dr. Head did not trust HR and called in Sara Davis to meet with them. Dr. Head once

15

again reported Bradley's behavior to Pouncey and Davis and the impact it was having on her. Visibly upset, Dr. Head desperately requested a change in her role, location, supervisor, or anything that would remove her from being around Vinson Bradley. Pouncey let Dr. Head know that she would have a substantial pay cut and not make the same salary if she moved. He then left the meeting.

89.    Davis continued the meeting and told Dr. Head that there were no other jobs at the College where she would not report to Vinson Bradley. Davis also warned Dr. Head that Pouncey would "go rogue" and that she could not ensure that the meeting with Pouncey would not get back to Dean Bradley.

90.    Defendant Pouncey did nothing to address the issues Dr. Head reported. Instead, he left the meeting and ignored the situation.

<u>Harassment Directly Results in Dr. Head's Termination</u>

91.    The harassment continued up until Dr. Head was eventually terminated.

92.    Defendant Bradley purposely scheduled staff meetings on days and at times when Dr. Head had previously submitted leave.

93.    Bradley undermined Dr. Head with her staff by allowing her subordinates to do things that she would not allow them to do. Dr. Head was then unable to discipline those subordinates because Bradley would back up the subordinates over Dr. Head.

94.    James David Williams, a male employee on the Fairhope campus who directly reported to Dr. Head, was allowed to come and go from work as he pleased by Dean Bradley.

95.    When the Fairhope Campus Director, Mandy Bezeredi, reported this to Dr. Head, Dr. Head reported it to Bradley and HR. Neither HR nor Bradley backed up Dr. Head.

96.     Pouncey and the College began to diminish Dr. Head's authority and the ability of her subordinates to do their jobs.  This was done in an effort to undermine Dr. Head.

97.     The College continued to hold regular meetings between Dr. Head and Bradley, putting them in the same room, even though Dr. Head was adamant she feared him.  This had the effect of limiting Dr. Head's ability to perform her job duties and to have the College closely monitor her actions and performance more so than of other employees.

98.     The failure of President Pouncey and the other Defendants to protect Dr. Head and to more closely scrutinize her performance continued until Dr. Head was terminated a few months later.

99.     Among the allegations made against Dr. Head, President Pouncey stated that the College was concerned that there was a "lack of ability to create a collegial environment within the department."

100.    Because Dr. Head had complained about the unlawful and discriminatory conduct and harassment by Defendant Bradley, and the hostile work environment Bradley created, the College and President Pouncey in turn alleged that there was a lack of a collegial environment.

101.    Bradley's actions that created the discriminatory and hostile environment were used against Dr. Head to support her termination.  The conduct alleged herein contributed to the harassment suffered by Dr. Head just prior to her termination and to Dr. Head's termination.

102.    42 U.S.C. § 1983 makes civilly liable any person who, under color of state, subjects, or causes to be subjected, any citizen of the United State to the deprivation of any rights, privileges, or immunities secured by the Constitution.

<u>Pervasive Sexual Harassment and Discrimination at the College</u>

103.    The College and Pouncey later confirmed that Bradley was responsible for creating a hostile work environment against females based on their sex and for abusing his authority.  An investigation into Defendant Bradley concluded that he was abusing his power and sexually harassing at least one female employee.

104.    Multiple other women have made allegations against Bradley based on perceived discrimination or harassment based on sex.  At least two other women have filed EEOC charges against the College related to Bradley's behavior and the College's efforts to protect him.

105.    The College has since terminated the employment of Defendant Bradley.

106.    The College gave Bradley a payout upon his separation from the College.

107.    The College intentionally, willfully, and maliciously discriminated and retaliated against Dr. Head by refusing to properly investigate her allegations of sexual harassment and discrimination on behalf of herself and others and for terminating her employment because of her sex and sexual harassment allegations.

108.    As a proximate cause of the wrongful acts of Defendants, the Plaintiff, Dr. Head, avers she has suffered, and will continue to suffer, economic losses, lost wages, income, mental anguish and other compensatory damages.  The Plaintiff has suffered, and will continue to suffer, humiliation and mental distress as a result of the Defendants' behavior towards her.  She has suffered, and will continue to suffer, mental anguish and lost income from the loss of her job including loss of benefits, retirement credit, and wages.  She has suffered, and will continue to suffer, lost professional reputation, consequential damages and other economic losses due to said actions of the Defendants.  The Defendants' actions have caused, and will continue to cause,

substantial pecuniary, economic, and monetary losses, loss of enjoyment of life, and other non-pecuniary losses.

109.    The Defendants' actions were committed negligently, intentionally, knowingly, maliciously, in bad faith, and/or with reckless disregard for Plaintiff's state and federally protected rights.

**COUNT ONE:**
**Sexual Harassment: Hostile Work Environment**
**Title VII and 42 U.S.C. § 1983**

Plaintiff asserts this Title VII claim against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his official capacity as Dean of Student Services at Coastal Alabama Community College.

Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. Section 1983 against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his individual and official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his individual and official capacity as President of Coastal Alabama

Community College; and Vinson Bradley, in his individual and official capacity as Dean of Student Services at Coastal Alabama Community College.

110.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set out herein.

111.    Dr. Head and other female employees were subjected to a hostile, offensive, and abusive working environment by Defendant Pouncey and Defendant Bradley as a direct result of her sex, female.

112.    The harassment against Dr. Head was pervasive, and Defendants knew or should have known of the hostile work environment.

113.    Defendants ratified the hostile and offensive acts of Pouncey and Bradley and the hostile environment.

114.    Dr. Head found the harassment to be humiliating, offensive, unfair and in violation of her federally protected rights.

115.    The conduct alleged herein created an intolerable condition and work environment under which Dr. Head worked or attempted to work.

116.    The conduct alleged herein contributed to the ultimate harassment suffered by Dr. Head just prior to her termination and to Dr. Head's termination.

117.    Upon information and belief, Defendants knew or should have known of the discrimination and harassment by Pouncey and Bradley and had received prior complaints from Dr. Head and other employees.

118.    Defendants knew or should have known that Pouncey and Bradley's conduct violated clearly established federal law.

20

119.     The Defendants' conduct was done with reckless indifference to Dr. Head's federally protected rights, and Defendants failed to make good faith efforts to comply with the law.

120.     Dr. Head suffered frustration, anxiety, humiliation, and emotional distress and other compensatory damages as a result of the harassment.

121.     Dr. Head has been forced to obtain legal services of the undersigned attorney to enforce her rights under Title VII and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT TWO:
### Wrongful Termination
### Title VII AND 42 USC § 1983

Plaintiff asserts this Title VII claim against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his official capacity as Dean of Student Services at Coastal Alabama Community College.

Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. Section 1983 against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H.

21

Baker, in his individual and official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his individual and official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his individual and official capacity as Dean of Student Services at Coastal Alabama Community College.

122.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set forth herein.

123.    Dr. Head was terminated as a direct result of her sex, female, in violation of Title VII and 42 U.S.C. Section 1983.

124.    The substantially motivating factor for Defendants' termination of Dr. Head was her sex, female.

125.    The Defendants' conduct was done with reckless indifference to Dr. Head's federally protected rights, and Defendants failed to make good faith efforts to comply with the law.

126.    Reasonable public officials knew or should have known that their actions violated clearly established law.

127.    As a result of the Defendants' discriminatory actions, Dr. Head has suffered extreme harm including, but not limited to, mental anguish, emotional distress, emotional suffering, and lost wages.

128.    As a direct result of the Defendants' treatment and actions, Dr. Head has lost income and benefits, suffered emotional distress, and other compensatory losses.

129.    Dr. Head has been forced to obtain legal services of the undersigned attorney to enforce her rights under Title VII and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT THREE:**
**Retaliation**
**Title VII and 42 U.S.C. § 1983**

Plaintiff asserts this Title VII claim against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his official capacity as Dean of Student Services at Coastal Alabama Community College.

Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. Section 1983 against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his individual and official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his individual and official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his individual and official capacity as Dean of Student Services at Coastal Alabama Community College.

130.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set out herein.

23

131.    Dr. Head reported to Defendant Pouncey that she and other employees were subject to hostile work environment sexual harassment and quid pro quo sexual harassment by Defendant Bradley.

132.    Defendant Pouncey responded with his own sexual harassment and disparate treatment against Dr. Head.

133.    Dr. Head opposed employment practices she reasonably believed to be discriminatory and in violation of Title VII.

134.    As a direct result of the complaints of Dr. Head, the Defendants harassed and retaliated against her, directly and indirectly, in retaliation for her open opposition and expression of concerns regarding possible discriminatory practices of Defendant Bradley, Defendant Pouncey, and Defendant Coastal Alabama Community College and its administrators.

135.    As a direct result of Dr. Head' complaints, Defendants escalated their harassment and proceeded to terminate her and threaten her future livelihood and that of her family.

136.    Dr. Head's opposition to discriminatory conduct was a motivating factor in the adverse actions taken against her.

137.    The Defendants engaged in retaliation against Dr. Head in violation of Title VII and 42 USC Section 1983 for her exercise of federally protected rights which is prohibited and discriminatory.

138.    Reasonable public officials knew or should have known that Defendants' actions violated clearly established law.

139.    The Defendants knew or should have known of the unlawful conduct of Pouncey, Bradley, and other administrators at CACC and failed and/or refused to take appropriate action to stop the retaliatory conduct.

24

140.    The Defendants ratified the conduct of Pouncey, Bradley, and other administrators who engaged in retaliatory conduct against Dr. Head.

141.    The Defendants acted willfully, intentionally and with callous or reckless indifference to Dr. Head's federally protected rights, and the Defendants failed to make good faith efforts to comply with the law.

142.    As the direct and proximate result of the Defendants' wrongful actions, Dr. Head was caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.

143.    Dr. Head has been forced to obtain legal services of the undersigned attorney to enforce her rights under Title VII and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

### COUNT FOUR:
### Failure To Supervise and Train
### 42 U.S.C. § 1983 and Fourteenth Amendment

Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. Section 1983 against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his individual and official capacity as Chancellor of the Alabama Community College System; and Craig Pouncey, in his individual and official capacity as President of Coastal Alabama Community College.

144.    Plaintiff reavers and realleges the foregoing paragraphs as if fully set forth herein.

145.    The Defendants were charged with the management and operation of Coastal Alabama Community College.

146.    The Defendants were responsible for implementing and enforcing EEO policies of the College including, but not limited to, policies related to sex discrimination, harassment, and retaliation in the workplace, and Title VII.

147.    The Defendants had an affirmative duty to train employees, including appropriate training for Human Resource officers, regarding EEO policies to prevent discrimination, harassment, and retaliation in the workplace.

148.    The Defendants had an affirmative duty to investigate complaints of discrimination and harassment and to take corrective action to prevent discriminatory conduct in the workplace in accordance with the College's policies and federal and state laws.

149.    The Defendants failed and/or refused to provide adequate training and supervision to its agents, staff, and servants, including President Pouncey, Dean Bradley, Lambert, and Bugos, in the lawful execution of their duties, and this failure to train and supervise became the unconstitutional policy of CACC.

150.    The Defendant knew and/or should have known of the importance in obtaining and providing training and supervision to its employees and managers and of the risk associated with its failure to provide it employees and managers with such training.

151.    The Defendants' conduct was done with reckless indifference to Dr. Head's federally protected rights, and the Defendants failed to make good faith efforts to comply with state and federal law.

152.    The Defendants' failure to properly train and supervise amounted to a deliberate indifference to the Constitutional rights of Dr. Head.

153.    The Defendants acted willfully, intentionally, and/or with callous or reckless indifference to Dr. Head's rights guaranteed under the law.

154.    Reasonable public officials knew or should have known that their actions violated clearly established law.

155.    Dr. Head suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment and retaliation.

156.    As a direct result of the Defendants' treatment and actions, Dr. Head has lost income and benefits, suffered emotional distress, and had other compensatory losses.

157.    Dr. Head has been forced to obtain legal services of the undersigned attorney to enforce her rights and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT FIVE:**
**Equal Protection Claim**
**42 U.S.C. § 1983 and Fourteenth Amendment**

Plaintiff asserts this Title VII claim against Defendants Alabama Community College System; Coastal Alabama Community College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his official capacity as Dean of Student Services at Coastal Alabama Community College.

Plaintiff asserts this Fourteenth Amendment claim pursuant to 42 U.S.C. Section 1983 against Defendants Alabama Community College System; Coastal Alabama Community

27

College; Trustees Kay Ivey, J.E.B. Shell, John Mitchell, Valerie Gray, Britton Lightsey, Goodrich Rogers, Ron Houston, Llevelyn Rhone, Tim McCartney, Dr. Yvette Richardson, in their official capacities as Trustees of the Alabama Community College System; Jimmy H. Baker, in his individual and official capacity as Chancellor of the Alabama Community College System; Craig Pouncey, in his individual and official capacity as President of Coastal Alabama Community College; and Vinson Bradley, in his individual and official capacity as Dean of Student Services at Coastal Alabama Community College.

158.    Plaintiff reavers and realleges the foregoing paragraphs as if fully set forth herein.

159.    The Defendants subjected Dr. Head to different terms and condition of employment in violation of the Equal Protection Clause, as enforced through 42 U.S.C. Section 1983, based on her sex, female.

160.    The Defendants acted under color of law.  Defendant Pouncey claimed to be to be performing official duties even though he was acting outside the limits of lawful authority and in a way that misuses his power as President of Defendant CACC.

161.    The Defendants were expressly aware of the actions of Bradley and not only failed to prevent them, but facilitated further discrimination against Plaintiff and other similarly situated employees.

162.    In their actions toward Dr. Head as described herein, the Defendants acted willfully, intentionally, and/or with callous and/or reckless indifference to Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

163.    Reasonable public officials knew or should have known that their actions violated clearly established law.

164.    The Defendants failed and/or refused to adopt and/or implement policies and procedures to prevent discrimination rendering their EEO reporting mechanisms ineffective.

165.    The Defendants failed and/or refused to establish effective EEO policies and procedures and/or to stop unlawful conduct in the workplace, and this failure allowed discrimination in the workplace to occur without remedy establishing the unconstitutional policy of Coastal Alabama Community College to permit discrimination in the workplace to occur without redress.

166.    As a direct result of the Defendants' treatment and actions, Dr. Head has lost income and benefits, suffered emotional distress, and other compensatory losses.

167.    The Defendants' conduct was done with reckless indifference to Dr. Head's federally protected rights, and the Defendants failed to make good faith efforts to comply with the law.

168.    Dr. Head suffered frustration, anxiety, humiliation, and emotional distress as a result of the harassment.

169.    Dr. Head has been forced to obtain legal services of the undersigned attorney to enforce her rights and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A.    Grant Plaintiff a declaratory judgment that the actions, policies, and practices complained of herein of the Defendants violate Plaintiff's federally protected rights as set forth herein.

B.     Grant Plaintiff a preliminary injunction enjoining the Defendants, their agents, successors, employees, and attorneys and those acting in concert with them and at their direction, from maintaining or continuing the policies, practices, customs and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the Plaintiff's rights as set forth herein.

C.     Grant Plaintiff an order enjoining the Defendants, their agents, successors, employees, and attorneys and those acting in concert with them and at their discretion, from engaging in practices that discriminate against Plaintiff and those similarly situated.

D.     Grant Plaintiff an award of back pay from Defendant CACC in the amount Plaintiff would have earned but for those policies and practices complained herein.

E.     Grant Plaintiff front pay or wages in the amount equal to the pay or wages she would be earning after final judgment, but for Defendants' unlawful policies and practices complained of herein, and but for the delays Plaintiff will encounter in reaching her rightful place because of business necessity and other equitable considerations.

F.     Reinstate Plaintiff to the position and pay to which she would be entitled had she not be unlawfully terminated from her employment by Defendants.

G.     Award compensatory damages against all Defendants in an amount the jury determines will compensate the Plaintiff for her losses and damages and/or nominal damages as may be appropriate.

H.     Award punitive damages against Defendant Pouncey in an amount the jury determines will discourage and prevent such conduct in the future.

I.     Award Plaintiff's costs and expenses in prosecuting this action including an award of reasonable attorneys' fees.

J.      Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendants to report such information as is necessary to evaluate their compliance.

K.      Grant Plaintiff such other and further relief as equity and justice requires.

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

**Respectfully submitted this 27th day of September, 2023.**

/s/ Thomas M. Loper
Thomas M. Loper (LOPET8947)
ASB #: 8947-O57L

LOPER LAW LLC
452 Government Street, Suite E
Mobile, AL 36602
Phone: (251) 288-8308
tloper@loperlawllc.com

*Attorney for Plaintiff*

**Certificate of Service**

I hereby certify that on this 27th day of September, 2023, I filed the foregoing First Amended Complaint through this Court's Electronic Case Filing system which will serve the following counsel of record:

Windy C. Bitzer (BITZW7315)
Christine Harding Hart (HARTC5687)
HAND ARENDALL HARRISON SALE LLC
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
(251) 694-6375 (Facsimile)
wbitzer@handfirm.com

chart@handfirm.com

Attorneys for Defendants Coastal Alabama
Community College and Dr. Craig Pouncey

/s/ Thomas M. Loper
Thomas M. Loper (LOPET8947)

**To Be Served via Certified Mail Return Receipt Requested as Follows:**

Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Governor Kay Ivey
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

J.E.B. Shell
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

John Mitchell
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Valerie Gray
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Britton Lightsey
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Goodrich Rogers
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Ron Houston
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Llevelyn Rhone
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Tim McCartney
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Dr. Yvette Richardson
Trustee of the Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Jimmy H. Baker
Chancellor, Alabama Community College System
135 South Union Street
Montgomery, AL 36104-4340

Vinson Bradley
Dean of Student Services, CACC
Coastal Alabama Community College
1900 U.S. Highway 31 South
Bay Minette, AL 36507

Vinson Bradley
281 Dickman Rd,
Bay Minette, AL 36507

Attorney General Steve Marshall
Office of the Attorney General of Alabama
501 Washington Avenue
Montgomery, AL 36104

EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☐ EEOC | Agency(ies) Charge No(s): |
|---|---|---|
| | | and EEOC |

| State or local Agency, if any | | |
|---|---|---|

| Name (Indicate Mr., Ms., Mrs.)<br>Dr. Brooke Head | Home Phone (Incl. Area Code)<br>(251) 348-0497 | Date of Birth<br>10/22/1981 |
|---|---|---|

| Street Address<br>32566 Wildflower Trail, Spanish Fort, AL 36527 | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name<br>Coastal Alabama Community College | No. Employees, Members<br>400 | Phone No. (Incl. Area Code)<br>(251) 575-3156 |
|---|---|---|

| Street Address<br>1900 Highway 31 South, Bay Minette, AL 36507 | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
Please see Statement of Particulars attached herewith as Exhibit A.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

5/16/22    *Brooke Head*
Date    Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

PLAINTIFF'S EXHIBIT
A
tabbies

## Exhibit A

## Statement of Particulars

## EEOC Charge for Dr. Brooke Head

1. In 2013, I was hired by Alabama Southern Community College as a Retention Specialist. This position was to serve the general population of students, as well as first generation/low income students. I remained employed by Alabama Southern until 2017 when it was merged with two other community colleges to form Coastal Alabama Community College. I then became an employee of Coastal Alabama Community College ("the College"), the new entity.

2. My role remained the same through the merger. In January of 2020, the Director of Student Support Services (TRIO program federally funded) took a new role as the Campus Director. All responsibilities of the Director became my responsibility as the 50% SSS Specialist. I was asked by the Dean of External Funding to apply for the position of Interim Director of Student Support Services and was offered the position to which I verbally accepted. Upon receiving the contract for this position, the salary offered was only a roughly $500 annual increase, and included frequent travel and overseeing additional employees on two campuses. After reviewing the contract, I declined the position.

3. In the Fall of 2020, I applied for the job of Director of Student Development at the College. I was interviewed by a group led by Dean Vinson Bradley and including Dennis Fuqua, Mandy Bezeredi, Sara Davis, and an unknown faculty member.

4. I accepted the job of Director of Student Development at the College in December of 2020. I reported to and was supervised by Dean Bradley.

5. Not long after accepting the Director of Student Development position, I began having issues with Dean Bradley.

6. On the afternoon of March 3, 2021, Dean Bradley called me into his office to express his anger towards me because I had communicated with the Dean of Nursing, Jean Graham, as well as the Campus Director in Fairhope, Mandy Bezeredi. It was near the end of the day and employees were leaving work for the day. I ended up leaving his office at 5:15 p.m., after the College had closed, and had to rush to pick up my children from daycare before closing.

7. The next day, March 4, I met with Sara Davis, the College's Chief Operating Officer and Bay Minette Campus Director, and broke down about the hostile confrontation that Dean Bradley had with me the evening before. I reported to her that Dean Bradley hollered, slammed his hand on the desk, and reprimanded me. She told me that his behavior was unacceptable and that she had noticed his behavior as well.

8. Davis called Elizabeth Ripp, the College's then-Director of HR, so that I could report his behavior to her. I reported my issues concerning Dean Bradley, specifically, I gave Ripp the details of the hostile confrontation that I had had with Dean Bradley and told her that he was creating a hostile work environment.

9. On March 8, Dean Bradley confronted me about my meetings with HR and with Davis. He called me a "punk ass."

10. On May 4, 2021, while eating a grapefruit at my desk, Kathryn Lambert, an employee from the Human Resources Department, came in my office on her way to meet with Dean Bradley. She was crying because Dean Bradley had "unfriended" her on Facebook. Noticing that I was eating a grapefruit, she asked me if I had heard of the "grapefruit technique." I told her no. She then texted me a video that was sexual in nature involving a grapefruit. I opened the video on my phone but after noticing how vulgar it was, I stopped watching it.

11. On May 5, 2022, I learned of an issue at the Brewton campus with the Campus Director there using racist and sexual language. I reported this to my supervisor, Dean Bradley, and Dean Bradley confronted the Campus Director about these allegations.

12. I was contacted by the College's President, Craig Pouncey, and instructed to come to his office. There, I learned it was about allegations described above. President Pouncey made it clear that he was upset with me for reporting it to Dean Bradley, though it was my understanding of the College's reporting policies to report it to my supervisor. He made clear that sensitive issues like this should go directly to him and not to Human Resources or my supervisor.

13. On June 16, 2021, I was called by Dean Bradley and told that he would go to any extreme to protect his job. He berated me for an hour.

14. I reported the June 16 phone call from Dean Bradley directly to President Pouncey, as President Pouncey had instructed me to do in our earlier meeting, and requested a meeting with Pouncey. I met with Pouncey that afternoon.

15. While meeting with Pouncey, I expressed my concerns about how Bradley handled my reporting of the allegations and my concerns that Bradley was abusing his power. Specifically, I told Pouncey that Bradley was sexually harassing women at the College, including me and Lindsey Byrd. Pouncey discounted my claims and said he couldn't believe that was happening. Pouncey told me that he would handle it and to return to my job.

16. On the morning of July 6, 2021, Dean Bradley came in my office and gave me a hug. He simply walked in my office, said "good morning Dr. Head," and walked around my desk and put both of his arms around me.

17. At 3:32 that afternoon, July 6, HR emailed me about an unrelated investigation that I believe to have been started by Dean Bradley.

18. On July 7, I met with HR about the investigation. The College had received complaints about me from some of the employees who reported to me. I later learned from some of the employees that reported to me that Kathryn Lambert and Dean Bradley were encouraging employees to complain about me. I believe that Lambert and Bradley were having a sexual relationship.

19. Two of the employees who complained about me were also put on interview committees for positions for which Dean Bradley's daughters were hired.

20. While meeting with HR, I again reported my concerns that Dean Bradley was sexually harassing me and other women. Michelle Bugos, the College's HR Director, told me that I didn't have a case.

21. I did not file a Title IX complaint as a result of my meeting with Bugos and because Dean Bradley was the College's person responsible for handling Title IX complaints.

22. On July 8, Dean Bradley unfriended me on Facebook.

23. On July 9, my advising team lost all of their access to needed computer programs and applications in Banner. We were unable to do necessary and required job duties.

24. The College was not supportive. It did not have policies or procedures in place to protect me. Dean Bradley was the College's Title IX coordinator responsible for investigating the exact sexual impropriety that he is guilty of. I did not feel like HR or President Pouncey listened to me or believed me, and I felt like I could not pursue a Title IX claim because I knew Dean Bradley would then retaliate against me.

25. I became afraid for my job and for what Dean Bradley and others might do in retaliation for reporting him to HR and President Pouncey. Dean Bradley regularly abused his power at the College and could get away with anything.

26. On November 29, 2021, I was notified by the College that it was terminating my employment.

27. I was subjected to discrimination and a hostile work environment which is evidence of the pattern and practice of discrimination and retaliatory conduct by Bradley. I was retaliated against for reporting Bradley's actions, including my eventual termination which was reported to the President.

28. I was subjected to discrimination and a hostile work environment as a result of the sexual harassment by Dean Bradley in violation of the Civil Rights Act of 1964, as amended. The College received complaints from other employees regarding hostile

work environment and/or had actual notice of such sexual harassment.  No action was taken by the College to stop the harassment or to create an environment that was not hostile and/or discriminatory.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Mobile Local Office
63 South Royal Street, Suite 504
Mobile, AL 36602
(251) 304-7920
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Brooke Head
32566 Wildflower Trail
Spanish Fort, AL 36527

Charge No: 425-2022-01087

EEOC Representative and email:    ARLENE GORCEY
Investigator
arlene.gorcey@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 425-2022-01087.

On behalf of the Commission

Erika LaCour
Digitally signed by Erika LaCour
Date: 2023.05.10 12:09:58 -05'00'

Erika LaCour
MLO Director



**cc:**
Michelle Bugos
Coastal Alabama Community College
1900 South US Highway 31
Bay Minette, AL 36507

Windy C Bitzer
Hand Arendall Harrison Sale LLC
PO BOX 123
Mobile, AL 36601

Thomas M Loper
Loper Law LLC
452 Government Street Suite E
Mobile, AL 36602

Please retain this notice for your records.