IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BROOKE HEAD,** | * | |
| | * | |
| Plaintiff, | * | CASE NO.: |
| | * | 1:23-cv-00295-TFM-MU |
| v. | * | |
| | * | |
| **COASTAL ALABAMA COMMUNITY** | * | |
| **COLLEGE, et al.** | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT VINSON BRADLEY'S MOTION FOR DISMISSAL**

COMES NOW, Plaintiff Brooke Head, by and through undersigned counsel, and submits her Opposition to Defendants' Motion for Dismissal. Plaintiff seeks relief for Defendants' violations of Plaintiff's civil rights pursuant to Title VII of the Civil Rights Act of 1964 and the First and Fourteenth Amendments of the United States Constitution through 42 U.S.C. § 1983. Defendant Vinson Bradley acted to deprive Plaintiff of her rights. Accordingly, the Defendant's Motion should be dismissed.

Plaintiff, Brooke Head, adopts and realleges the facts as alleged in her First Amended Complaint, as incorporated in Defendant Coastal Alabama Community College's Motion for Partial Dismissal (Doc. 18), and as incorporated in the ACCS Defendant's Motion to Dismiss (Doc. 22).

1

## Standard of Review

When evaluating a motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F. 3d 1295, 1301 (11th Cir. 2015).

In ruling on a Rule 12(b)(6) motion to dismiss, courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F. 3d 1087, 1089 (11th Cir. 2005). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## Argument in Response to Defendant

Plaintiff responds to Defendant Bradley's Motion for Dismissal based on issues of law raised as follows:

### I.     Bradley in his Official Capacity is Proper

To the extent that the Court finds that a claim against an employee is the same as a claim against his employer, Plaintiff does not object to the dismissal of official capacity claims against Defendant Bradley. However, if the Court finds that the College is not the correctly named employer of Plaintiff and that Defendant Bradley was her employer, Plaintiff seeks to maintain her claim against Defendant Bradley. Further, if new facts or evidence are discovered, Plaintiff reserves her right, with leave of Court, to amend her Complaint.

## II. Plaintiff Sufficiently Pleaded Facts to Defeat a Motion for Dismissal of Her Retaliation Claims

In his motion for dismissal, Defendant Bradley asserts that Plaintiff failed to meet the *Twombly* standard of informative pleading for her retaliation claims. See Doc. 21, ¶ 5. Accordingly, Defendant Bradley states that "[t]hese allegations and others lack any nexus with sexual harassment and specificity to be brought within the two year window of § 1983 as well as specificity to place Defendant on notice of what he is to defend against." See Doc. 21, ¶ 5. This assertion by Defendant Bradley fails on the facts and as a matter of law.

In her first amended complaint, Dr. Head includes numerous allegations that refute Defendant Bradley's misplaced assertion. Dr. Head has alleged that Defendant Bradley frequently told Dr. Head that he knew she reported him and subsequently instructed her to write his doctoral dissertation for him. See Doc. 12, ¶ 40. Additionally, following Dr. Head reporting Defendant Bradley on behalf of other female employees, Defendant Bradley took steps to limit Dr. Head's ability to perform her job duties. Defendant Bradley would deny previously-routine requests and meet with Dr. Head's subordinates in an effort to make her job more difficult. See Doc. 12, ¶¶ 83, 85.

Defendant Bradley contends that these allegations "lack any nexus with sexual harassment and specificity…to place the Defendant on notice of what is to defend against." See Doc. 21, ¶ 5. This contention is erroneous. Defendant Bradley's Motion for Dismissal fails to cite any authority or even submit that the alleged retaliatory actions must have a nexus with sexual harassment and specificity. Further, Dr. Head's First Amended Complaint alleges with examples that Defendant Bradley acted in this way because Dr. Head reported him to the College for his previous actions. See Doc. 12, ¶ 36. Dr. Head's allegations in her First Amended

Complaint more than sufficiently provide the grounds to support her claim for relief and damages for Defendant Bradley's retaliatory actions.

### III. Plaintiff's Complaint is Timely

Defendant Bradley is correct that in Alabama, claims based on 42 U.S.C.A. § 1983 are subject to a two year statute of limitations. See Doc. 21, ¶ 2. However, Defendant Bradley errs in stating that this prohibits relief for any of Bradley's action prior to September 27, 2021, and from evidence his earlier behavior from be relevant to this case.

Federal courts have widely accepted the *continuing violation doctrine* as federal common law and accepted its applicability to a § 1983 litigant. *Herrera v. City of Espanola*, 32 F. 4th 980, 994 (10th Cir. 2022*); DePaola v. Clarke*, 884 F. 3d 481, 487 (4th Cir. 2018); *Sherman v. Town of Chester*, 752 F. 3d 554, 567 (2nd Cir. 2014). The continuing violation doctrine "applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *Hamer v. City of Trinidad*, 924 F. 3d 1093, 1098 (10th Cir. 2019). Plaintiff filed her complaint against Defendant Bradley in her First Amended Complaint on September 27, 2023. Doc. 12. Bradley's harassment continued for almost a year until her termination on or about November 29, 2021. See Doc. 12, ¶ 91. Additionally, Bradley continued to create a hostile work environment for Dr. Head throughout that period of time until Dr. Head's termination. See Doc. 12, ¶¶ 92-97. Each of these instances of sexual harassment or the instances of a hostile work environment would stand to be a separate unlawful act, if it stood by itself. Under the continuing violation doctrine adopted by numerous federal courts and accepted as federal common law, these are a connected and singular act. Plaintiff filed her complaint against Bradley within two years of the commission of this act.

In the alternative, Defendant also errs in stating that the two year statute of limitations prohibits any actions by Bradley before September 27, 2021 from being used against him based on the *repeated violation doctrine* and its applicability to § 1983 actions. *Herrera*, 32 F. 4th at 995. The repeated violation doctrine is a derivative of the continuing violation doctrine as it:

> "divides what might otherwise represent a single, time-barred cause of action into several separate claims, at least one of which accrues within the limitations period prior to suit."

*Hamer v. City of Trinidad*, 924 F. 3d 1093, 1100 (10th Cir. 2019). For the repeated violation doctrine to be applied, a discrete act by the defendant must have occurred within the statute of limitations timeframe and "not just the continuing effect of, or continuing harm from, a discrete act that occurred outside the limitations period." *Herrera*, 32 F. 4th at 995. Under this doctrine, the statute of limitations is reset when each new violation occurs. *Id*. Bradley continued to sexually harass Dr. Head and create a hostile work environment for her until she was terminated on or about November 29, 2021. See Doc. 12, ¶¶ 91-97. Under the repeated violation doctrine, Plaintiff filed her complaint against Bradley within the applicable two year statute of limitations.

IV.     **Actionable Claims**

In his Motion for Dismissal, Defendant Bradley incorrectly asserts the following standard for sexual harassment to be actionable under federal law: "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victims'] employment and create an abusive work environment." See Doc. 21, ¶ 7, *citing Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). Defendant Bradley fails to acknowledge that this standard is to be used under Title VII. *Meritor Savings Bank*, 477 U.S., at 67. Unsurprisingly and incorrectly, Defendant Bradley attempts to elasticate this standard to apply it to § 1983 claims. See Doc. 21, ¶¶ 8 and 9. Predictably, Defendant Bradley fails to cite a single authority

that supports his convenient notion that the Title VII standard be applied to § 1983 claims. For this reason, Defendant Bradley fails to present an actual argument as to why Plaintiff's § 1983 claims are not actionable as a matter of law. In the alternative, below, Plaintiff asserts multiple arguments that refute Defendant Bradley's assertions in his Motion for Dismissal.

Defendant Bradley mistakenly contends that "[o]nly one paragraph of Plaintiff's allegations attributes explicit or implicit sexual overtures." See Doc. 21, ¶ 7. Defendant Bradley turns a blind eye to multiple other paragraphs in Plaintiff's First Amended Complaint that contain allegations against him.

First, Defendant Bradley fails to acknowledge paragraph 25 of the First Amended Complaint. In that paragraph, Plaintiff alleges that Defendant Bradley told her that her "position was created specifically for her because Pouncey found her attractive and wanted to have her on the Bay Minette campus." Defendant Bradley will likely refute that this is a sexual overture by saying that he was merely repeating what Co-Defendant Pouncey had told him. But the fact of the matter is that this is something that Defendant Bradley could have fabricated in a matter of alienating Co-Defendant Pouncey and as a means to suggest his interest in Dr. Head because of her appearance. Defendant Bradley similarly fails to acknowledge paragraph 51 of the First Amended Complaint which alleges that Defendant Bradley informed Dr. Head that each time she would meet with Co-Defendant Pouncey, he would make remarks to Defendant Bradley regarding Dr. Head's "titties" and "sexy legs." See Plaintiff's Doc. 12, ¶ 51. Furthering this point, Defendant Bradley, Bradley turns a blind eye to paragraph 52 of the First Amended Complaint. This paragraph alleges that Defendant Bradley informed Dr. Head that Co-Defendant Pouncey said, when referring to her, that her "lips were quivering and she was shaking but that 'those titties and legs were looking fine'." See Doc. 12, ¶ 52. Taken as true in

reviewing a motion to dismiss, the veracity of these statements and actions will be proven as litigation progresses.

Additionally, Defendant Bradley ignores paragraph 27 of the First Amended Complaint which alleges that Defendant Bradley informed Dr. Head that his harassment would end if she would submit to his desires and sexual agenda. See Doc. 12, ¶ 27. Lastly, Defendant Bradley disregards paragraph 87 of the First Amended Complaint which alleges that Defendant Bradley explicitly attempted to get Dr. Head to go to his location "to be with him." See Doc. 12, ¶ 87. All of these allegations were ignored by Defendant Bradley in his Motion for Dismissal. Conveniently, Defendant Bradley's argument is wholly based on the false notion that Plaintiff only included one allegation of sexual harassment in her First Amended Complaint.

In his Motion for Dismissal, Defendant Bradley plainly states that "the allegations against him fail to describe conduct sufficiently severe or pervasive to have altered the condition of Dr. Head's employment and create an abusive working environment." See Doc. 21, ¶ 9. Once again, Defendant Bradley fails to cite the relevant standard for what conduct courts have considered to be "sufficiently severe or pervasive" in the past. The relevant standard, provided by *Mendoza*, is a two-part analysis. The first leg of the analysis states that the environment created by the conduct in question must be one that a "reasonable person would find hostile or abusive." *Mendoza*, 195 F. 3d at 1246 (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). The second part of the analysis is that the victim of the conduct must subjectively find the environment to be abusive. *Mendoza*, 195 F. 3d at 1246 (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). The Eleventh Circuit has identified four factors that are to be used in the objective analysis of the conduct: (1) the frequency of which it occurred; (2) the severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes

with the victim's job performance.  *Allen v. Tyson Foods*, 121 F. 3d 642, 647 (11th Cir. 1997)(*citing Harris*, 510 U.S. at 23).

Defendant Bradley fails to mention this analysis prescribed by our appellate court, and instead relies on a quotation with unequivocally no analysis of the facts at hand, as discussed below.  Plaintiff's alleged facts satisfy the second leg of the analysis based on the pleaded fact that she was scared by Defendant Bradley and would only meet with him under certain conditions that made her feel safe.  See Doc. 12, ¶ 26.

Instead of discussing the legal standard, Defendant Bradley's Motion for Dismissal includes a lengthy quotation from *Mendoza* that cites 13 different cases from 6 different circuits.  See Doc. 21, ¶ 9.  None of these cases cited by *Mendoza* have facts similar to the ones asserted in this matter.  *See id*.  For example, none of the cited cases include the alleged offender making explicit sexual advances, repeatedly phoning the victim stating his sexual desires, or blatantly admitting that he will end the hostile environment if she accepts his advances.

Additionally, by relying on a disjointed charcuterie board of cases, Defendant Bradley ignores his own-cited authority.  When completing the objective analysis, *Mendoza* states that courts are to examine the conduct in question in context and "under the totality of the circumstances whether the harassing conduct" meets the applicable legal standard.  195 F. 3d at 1246.  Defendant Bradley spurns our appellate court by not acknowledging this and instead deciding to boil the facts at hand down to a few sentences.

For all of the reasons above, Plaintiff's First Amended Complaint Sufficiently Pleads an Actionable Claim.

### V.   Plaintiff Has Actionable Claims for Retaliation

Defendant Bradley asserts that Plaintiff's First Amended Complaint fails to set out an actionable claim for retaliation. Defendant Bradley admits that:

> "if Head had specifically complained to the employer about sexual harassment or sexual hostile environment from Vinson Bradley, she might be allowed to pursue such a claim asserting that 'but for her protected activity' the alleged adverse actions by the employer would not have occurred."

See Doc. 21, ¶ 10. Defendant Bradley's own contention that his argument would not hold water had Plaintiff complained about the sexual harassment defeats him. Paragraph 29 of the First Amended Complaint plainly states that "Dr. Head reported the sexual harassment and Bradley's behavior to Sara Davis." Additionally, Paragraph 31 of the First Amended Complaint alleges that Sara Davis informed Dr. Head that she was subjected to a hostile work environment. Defendant Bradley's contention that Plaintiff did not complain about a hostile work environment would hold more water if Plaintiff was omniscient and knew what she was subjected to was a hostile work environment. The only way that Sara Davis would have informed Dr. Head of the hostile work environment would be if Dr. Head's complaints described a hostile work environment.

Defendant Bradley's assertion that Plaintiff merely complained of "uncivil behavior" is unfounded. As stated earlier, Defendant Bradley informed Plaintiff that this sort of behavior would cease if she would submit to his sexual advances, making this behavior sexual harassment. Defendant relies on the fact that the only specific complaint in the First Amended Complaint did not explicitly state sexual harassment or a hostile work environment. The reason for this is that that specific complaint was made via text from Plaintiff's phone. The other complaints were made in person or on the phone. By allowing this matter to move forward in litigation to allow for discovery, including depositions, Plaintiff will be able to bring forth the exact complaints and

9

reports that she made to the College regarding Defendant Bradley's sexual harassment and the hostile work environment he subjected Plaintiff to.

## Conclusion

Defendant Bradley's Motion for Dismissal wrongly seeks to relieve himself of any liability for his actions. Defendant Bradley's Motion relies on false notions of what was included in Plaintiff's First Amended Complaint and similarly relies on mythological legal theories while turning a convenient blind eye to the realities of the legal authority he uses to support his motion.

WHEREFORE, for the above-stated reasons, Plaintiff respectfully requests that Defendant Bradley's Motion for Dismissal be denied.

**Respectfully submitted this 22nd day of December, 2023.**

/s/ Thomas M. Loper
Thomas M. Loper (LOPET8947)
ASB #: 8947-O57L

LOPER LAW LLC
452 Government Street, Suite E
Mobile, AL 36602
Phone: (251) 288-8308
tloper@loperlawllc.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of December, 2023, the foregoing Plaintiff's Opposition to Defendant Vinson Bradley's Motion for Dismissal was filed with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following counsel of record:

Windy Bitzer (BITZ7315)
Christine Harding Hart (HART5687)
HAND ARENDALL HARRISON SALE LLC
Post Office Box 123
Mobile, AL 36601
Phone: (251) 432-5511
wbitzer@handfirm.com
chart@handfirm.com
*Attorneys for ACCS Defendants, Coastal Alabama Community College, and Craig Pouncey*

Henry H. Caddell
THIRY & CADDELL, LLP
1911 Government Street
Mobile, AL 36606
hhc45@bellsouth.net
*Attorney for Defendant Vinson Bradley*

                                                /s/ Thomas M. Loper
                                                Of Counsel