IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BROOKE HEAD, | * | |
| | * | |
| Plaintiff, | * | CASE NO.: |
| | * | 1:23-cv-00295-TFM-MU |
| v. | * | |
| | * | |
| COASTAL ALABAMA COMMUNITY COLLEGE, *et al.* | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |
| VINSON BRADLEY, | * | |
| | * | |
| Defendant. | * | |

DEFENDANT VINSON BRADLEY'S REPLY REGARDING HIS MOTION FOR DISMISSAL

COMES NOW Defendant, Vinson Bradley, by and through undersigned counsel and submits his reply to PLAINTIFF'S OPPOSITION TO DEFENDANT VINSON BRADLEY'S MOTION FOR DISMISSAL as says as follows:

A. Contrary to the suggestion of Head, it is well settled that Title VII and §1983 claims have the same elements where the claims are based on the same set of facts;

B. In order to shore up her position regarding the sufficiency of her claims for sexual harassment, sexual hostile environment and disparate treatment on the basis of sex, Head found it necessary to embellish and misrepresent the specific allegations of her Amended Complaint against Bradley;

C. Even considered most favorably to the Plaintiff, Head's allegations of sexual harassment, sexual hostile environment and disparate treatment on the basis of sex are clearly insufficient under the applicable standards provided by the 11th Circuit in *Mendoza v. Borden, Inc.*;

D. Plaintiff's claims against Bradley are untimely since "continuing violations" cannot exist where there are no valid initial violations; and

E. Plaintiff's Amended Complaint fails to allege facts that are sufficient to support an essential element of her claims for retaliation or wrongful termination on the basis of sex.

A. Plaintiff's Claims Against Bradley Under §1983 must be Evaluated Under the Standards of Title VII

In page 5 of her Brief in Opposition to Dismissal (Doc. 28, p 5) Head attacks Bradley's reliance upon the standard in *Meritor Savings Bank v. Vinson*, 477 U.S. 57-67 (1986) and *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246-1247 (11th Cir. 1999) as prescribing the standards for sexual harassment to be actionable under Federal Law in claims brought under 42 U.S.C.A. §1983.

> Unsurprisingly and incorrectly, Defendant Bradley attempts to elasticate this standard to apply to §1983 claims . . . Predictably, Defendant Bradley fails to site a single authority that supports his convenient notion that the Title VII standard be applied to 1983 claims. For this reason, Defendant Bradley fails to present an actual argument as to why Plaintiff's §1983 claims are not actionable as a matter of law.

(Doc. 28, p 5-6).

However, it is widely settled under numerous decisions of our 11th Circuit Court of Appeals that, where claims are brought both under Title VII and §1983 and where the facts on which the claims rely are the same, the elements to be analyzed under §1983 and Title VII are identical. Most recently, this is the holding of the 11th Circuit in *Crawford v. Carroll*, 259 F.3d 961, 970 (11th Cir. 2008).

> "...the analysis of disparate treatment claims under §1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same. *See Able v. Dubberly*, 210 F.3d 1334, 1338 (11th Cir. 2000) (holding that Title VII and §1983 claims

> have the same elements where the claims are based on the same set of facts): *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) (stating that "[w]here, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical ... [and] we need not discuss plaintiff's Title VII claims separately from this section 1981 and section 1983 claims").

*Id.*

This principle had been long established by the 11th Circuit. *Hardin v. Stynchcomb;* and *Cross v. State of Alabama Department of Mental Health & Mental Retardation*, 691 F.2d 1364, 1369, Note 16 (when §1983 is used as a parallel remedy for violation of §703 of Title VII the elements of the two causes of action are the same, citing *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980);) *Cross v. State of Alabama Department of Mental Health & Mental Retardation*, 29 F.3d 1490, 1508 (11th Cir. 1995) (when §1983 is used as a parallel remedy for violation of §703 of Title VII [42 U.S.C.A. §2000 e-p, the elements of the two causes of action are the same.)

It was absolutely appropriate for Bradly to reply upon the extensive discussion and analysis provided in *Mendoza* for assessing the sufficiency of claims of sexual harassment or hostile sexual environment. As discussed below in the light of the allegations of Head's Amended Complaint, the 11th Circuit in *Mendoza* describes precedents in which more serious allegations of sexual harassment were rejected as insufficient to support asserted claims. In view of the weakness of Head's allegations on their face, it is understandable that she should choose to disparage and run from the analysis of *Mendoza*.

B. In an Effort to Shore Up the Insufficiency of her Claims of Sexual Harassment/Hostile Environment, Head has Chosen to Embellish and Misrepresent the Actual Claims of her Amended Complaint Against Bradley

At p. 9 of her Brief, Head represents that "as stated earlier, Defendant Bradley informed Plaintiff that this sort of behavior would cease if she would submit to his sexual advances, making this behavior sexual harassment". (Doc. 28, p 9, **Emphasis Added**). However, nowhere in the Amended Complaint is Bradley accused of propositioning or making any significant sexual advances towards Head. Head's statement in her Brief apparently refers to paragraph 27 of her Amended Complaint where she asserts that "Defendant Bradley made clear that if Head would be submissive to him and his agenda that the harassing behavior would stop. Bradley behaved in this matter to tame Dr. Head and put her in her place." (Doc. 12, para 27.) The context of this paragraph is Draft 26, in which Head "alleges that Bradley began threatening her, screaming at her and pounding his fists on his desks while hovering over her and pointing at her face." While, if true, this allegation might reflect behavior that is uncivil and arguably improper on behalf of a supervisor, nowhere in the Amended Complaint is it asserted to be behavior in furtherance of sexual advances. Bradley was Head's supervisor. Of course it would be necessary that Head, as his subordinate, be submissive to him and his agenda.

Nowhere in her Amended Complaint has Head alleged sufficient facts under the standards of *Mendoza* to show a sexual agenda on behalf of Bradley. As described below those allegations fall far short. Tellingly, Head's Brief follows with an admission that "the only specific complaint [to HR] in the First Amended Complaint did not explicitly state sexual harassment or a hostile work environment". (Doc. 28, p 9). This admission by Head's attorney was binding upon her. *Laird v. Air Carrier Engine Services, Inc.* 263 F.2d 948, 953 (5th Cir. 1959)(This precedent is binding upon the Eleventh Circuit. *Bonner v. City of Prichard, Ala.* 661 F.2d 1206, 1207 (11th Cir. 1981). Head's Brief goes on to say that such complaints were made by her "via text from Plaintiff's phone" or "in person or on the phone". Head now contends that she should be able to conduct discovery to nail down the text message sent from her own phone or the content of personal complaints conveyed by telephone. Discovery for Head to learn the content of her own text messages and comments to HR about Bradley? These were

all things under the purview of <u>her own personal knowledge</u> when she formulated the allegations of her Complaint.

Clearly Head never complained to HR or higher officials about any specific <u>sexual</u> harassment on the part of Bradley. Although paragraph 29 of her Amended Complaint contains a formulaic allegation that she reported sexual harassment, she follows up with the very specific complaint that she made: "Specifically, on March 4, 2021, Dr. Head reported to Davis by text message that she was concerned about Bradley hollering at her and punching his desk and that the mental anguish it caused her forced to take a day offer [sic] to recover". (Doc. 12, p 8, para 29). While Bradley's alleged raising his voice and punching on his desk might well be characterized as an uncivil practice creating a "hostile work environment" subject to an employee grievance procedure, the allegations, if true, do not constitute proper reporting of sexual harassment or sexual hostile environment. Federal sexual discrimination law did not create a Federal "civility code". *Oncale v. Offshore Services, Inc.*, 523 U.S. 75, 118 S. Ct. 998, 1000-02 (1998). The 11th Circuit has further elaborated how statements and conduct are to be examined to determine whether they were specifically pervasive or severe to constitute sexual harassment. The 11th Circuit in *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (2000).

> "…the statements and conduct must be of a sexual or gender related nature – "sexual advances, requests for sexual favors, [or] conduct of a sexual nature". *Mendoza, supra at 1245* -before they are considered in determining whether the severe or pervasive requirement is met. <u>Innocuous statements or conduct or boorish ones that do not relate to the sex of the actor or the offended party (the plaintiff), are not counted.</u> Title VII, as it has been aptly observed, is not a "general civility code". Citing *Faragher v. City of Boca Raton* 540 U.S. 775 at 778.

*<u>Id</u>.* **Emphasis Added.**

Finally, at p. 8 of her Brief, without citation to any of the allegations of her Amended Complaint, Head implies that Bradley made explicit sexual advances, repeatedly phoning the victim stating his sexual desires". The only allegation of this nature in the Amended Complaint

appears in paragraph 28 where it is alleged that Bradley regularly called and texted Head after hours for inappropriate reasons, telling her that he missed her and that short blondes are his type. The paragraph went on to contain an explicit comment about how Head's breasts aroused him. These allegations, if true, simply fall short of a sufficient claim of sexual harassment/sexual hostile environment under the standards provide by *Mendoza* as set out below. Head's exaggerations and embellishments of her allegations are understandable in view of the insufficiency of her claims measured under the standards of *Mendoza*.

C. Head's Allegations of Sexual Harassment, Sexual Hostile Environment and Disparate Treatment Fall Short of the Standards Set Out by the 11th Circuit in *Mendoza v. Borden, Inc.*

Having erroneously suggested that the standards of Title VII set out in *Mendoza* do not apply to §1983 claims, Head conveniently avoided discussing the stringent standards of *Mendoza*. Her only response to the lengthy catalogue of insufficient claims set out in *Mendoza* was that "none of these cases cited by *Mendoza* have facts similar to the ones asserted in this matter" (Doc. 28, p 8). Respectfully, even assuming all of Head's non-formulaic allegations most favorably to support her Complaint, those allegations simply fail to set out an actionable claim for sexual harassment or hostile sexual environment under 42 U.S.C.A. §1983.

To set the stage for further analysis, Bradley submits the following summary of Head's allegations after stripping away the allegations that are purely formulaic or conclusory:

--- Immediately after starting the new position, Dean Bradley told Dr. Head that the position was created specifically for her because Pouncey found her attractive and wanted to have her on the Bay Minette Campus. (Doc. 12, p 7, paragraph 25) (Even assuming without conceding, that Bradley fabricated this statement from Pouncey).

--- Bradley ... began threatening Dr. Head, screaming at her and pounding his fists on this desks while hovering over Head and pointing at her face. Dr. Head learned that Bradley did this to other women that worked for him but that he did not treat his male subordinates in the same way. Dr. Head also learned that Bradley went as far as inquire about sound proofing his office because of his behavior. He regularly locked his door and closed his blinds while meeting with Head and his female employees. Dr. Head began to only meet with Bradley toward the end of the workday where there was a clear end time and only after notifying other employees in the office that she was meeting with him. (Doc 12, p 7, paragraph 26).

--- "Bradley regularly called and texted Dr. Head after hours for inappropriate reasons. Bradley told Head "I miss you", and he told her that short blondes are his type, he commented "Goddamn, look at those titties in that red blouse, let me sit down before you see my crotch". (Doc. 12, p 7, paragraph 28).

--- Bradley himself told Dr. Head that Pouncey would make crude comments about Head's "titties" and "sexy legs" after each time Head met with Pouncey. (Doc. 12, p 11, paragraph 51)(Even assuming, without conceding that Bradley fabricated this quote from Pouncey")

--- Bradley told Head that following Bradley's reporting of an unrelated racial slur from another employee to Pouncey, Pouncey commented to Bradley that Dr. Head's lips were quivering and she was shaking but that "those titties and legs were looking fine." (Doc. 12, p 11, paragraph 52) (Even assuming, without conceding that Bradley fabricated this comment from Pouncey)

--- On June 16, 2021, Bradley called Dr. Head and spent an hour and a half alternately berating her and then trying to get her to go to the Brewton Campus to be with him". (Doc. 12, p 15, paragraph 87).

These allegations of the Amended Complaint are the sum total of allegations against Bradley which might conceivably be construed as sexual harassment. Bradley asks this Court to evaluate these allegations in the light of the standards of *Mendoza*.

It would be a rare coincidence if one of the Appellate Courts had reviewed the sufficiency of sexual harassment claims identical, on their face, to those now asserted by Head. However, among the thirteen examples of insufficient claims catalogued by *Mendoza* are ones which appear to be significantly more egregious than those asserted by Head. We ask the Court to direct its attention to the following examples:

The 7th Circuit opinion in *Weiss v. Coca Cola Bottling Company of Chicago*, 990 F.2d 333, 337 where the supervisor "repeatedly asked about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area and tried to kiss her once at a bar and twice at work – were not sufficient for actionable sexual harassment." *Mendoza, supra* at 1247. **Emphasis Added.** These allegations of sexual harassment/hostile work environment are far more serious and pervasive than Head's allegations in the present case. They involve clear, repeated sexual advances and touching well beyond anything asserted by Head. Other insufficient claims catalogued in *Mendoza* were every bit as severe and often repeated over a longer period of time than the Head allegations but nevertheless found to be insufficient to support sexual harassment claims.

The 7th Circuit opinion in *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (Holding insufficient severe or pervasive to support hostile-environment claim 9 instances of

offensive behavior over 7 months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation.)

*Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-24 96th Cir. 1997) (Reversing jury verdict and finding conduct was "sex based" but insufficiently severe or pervasive to state actionable claim, where conduct over a 4 month period involved repeated sexual jokes; one occasion of looking plaintiff up and down smiling and stating, there's "nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks" asking plaintiff "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stating, "just get the broad to sign it"; telling plaintiff she was paid "great money for a woman"; laughing when the plaintiff mentioned the name of Dr. Paul Busam, apparently pronounced as "bosom".

Other examples set out in *Mendoza* refer to alleged harassment extending over periods of many months, often involving touching or attempted touching. The allegations of Head's Complaint clearly fail, on their face, to set out severe, pervasive, repeated sexual harassment which would support the asserted claims. Following the standard set out in *Mendoza*, this Court should dismiss those claims and relieve the parties from the burden of going forward with the present litigation.

The final case referenced by *Mendoza*, indest the *Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) provided a quote important to the present case:

> "All of the sexual hostile environment cases decided by the Supreme Court have involved <u>patterns or allegations of extensive, long-lasting, un-redressed and uninhibited sexual threats of conduct that permeated the plaintiff's work environment"</u>.

*Mendoza, supra* at 1247. **Emphasis Added.** Clearly evaluated in their face, Head's allegations fall far short of articulating an actionable claim for sexual harassment of hostile sexual environment. Thus, Head's sexual harassment claims against Bradley are due to be dismissed.

D. Plaintiff's Claims are Untimely Since Continuing Violations Should Not be Found in Instances Where the Initial Allegations do not Support any Violation Per Se

In her Brief at p 4, Head asserts that her §1983 claims were brought within the 2 year statute of limitations under the "Continuing Violation Doctrine". Here Head asserts that she has described in her Complaint "a series of separate acts that collectively constitute one lawful act as opposed to conduct that is a discreet lawful act". To support this proposition Head contends that Bradley continued to create a "hostile work environment" for Dr. Head throughout the period of time until Head's termination on November 29, 2021. In support of the proposition Head cites paragraphs 92-97 of her Amended Complaint allegedly setting out a series of "sexual harassment or the instances of hostile work environment" which should be considered an ongoing unlawful act.

The problem with this argument is that with the existence of "continuing violations" is logically dependent on the existence of any original actionable violations. For all the reasons argued above, there was never any actionable sexual harassment or sexual hostile environment prior to the period described in paragraphs 92-97 of the Amended Complaint, culminating in the ultimate termination of Head's employment. Beyond that, although they were described as "harassment" in the Amended Complaint (Doc. 12, p 16, paragraph 91), none of these allegations make any reference to sexual harassment or sexual hostile environment, but simply describe actions taken by Bradley toward his subordinates including Dr. Head.

Even considered in a light most favorable to Head, allegations, at worst establish that Bradley might have become an unfair supervisor from Head's perspective. The missing lynchpin of the "Continuing Violation Doctrine" is that there were never any actionable sexual harassment, hostile sexual environment allegations in the first place. If there was retaliation or adverse action on the part of Bradley in response to Head's accusation of raising his voice and

pounding on his desk, while it might be characterized as boorish, uncivil or unfair, it cannot support "continuing violations" under §1983. The only alleged sexual harassment or hostile sexual environment occurred well outside of the 2 year statute of limitations which requires that those claims be dismissed.

E. Plaintiff's Claims of Retaliation or Wrongful Termination Against Bradley Fail to Allege an Essential Element and are due to be Dismissed

The fatal flaw of Head's claims of retaliation, including wrongful termination, against Bradley is that Head now by her own admission never explicitly complained to Human Resources or the higher-ups that she was being sexually harassed by Bradley. As described above and in Bradley's Motion for Dismissal, the specific complaint made by Head was as follows: "Specifically, on March 4, 2021 Dr. Head reported to Davis by text message that she was concerned about Bradley hollering at her and punching his desk and that the mental anguish it caused her forced her to take a day offer [*sic*] to recover." (Doc. 12, p 8, paragraph 29). Now, in Head's recent Brief she admits that her only specific complaint to HR did not "explicitly state sexual harassment or hostile work environment". (Doc 28, p 9). The 11th Circuit has affirmed that an essential element of a retaliation claim under Title VII is alleging and establishing a causal connection between a plaintiff's participation in a protected activity and an adverse employment action. As held by the 11th Circuit in *Gupta v. Florida Board of Regents*, "to establish a causal connection a plaintiff must show that "the decision-maker[s] [were] aware of the protected conduct" and "that the protected activity and the adverse action were not wholly unrelated". citing *Early v. Nationwide Mutual Ins. Co.* 197 F.3d 1322, (11th Cir. 1999). *Gupta, supra* at 590. **Emphasis Added.**

Since Head by her own admission never told Human Resources, the decision-maker, that she was being sexually harassed by Bradley, she cannot establish that those decision-

makers were aware of the protected conduct. Thus retaliation cannot be established, since an essential element of her retaliation claims is missing. All of head's claims of retaliation, including retaliatory termination, are due to be dismissed.

HENRY H. CADDELL, CADDH9244
Attorney for Vinson Bradley

CERTIFICATE OF SERVICE

I, Henry H. Caddell, Esq., hereby certify that on this the 11th day of January, 2024, the Defendant Vinson Bradley's Reply Brief was filed with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following counsel of record:

Thomas E. Loper, Esq.
452 Government Street
Suite E
Mobile, Alabama 36602-2320

Windy C. Bitzer, Esq.
Christine Harding Hart, Esq.
HAND ARENDALL HARRISON SALE, LLC.
P. O. Box 123
Mobile, Alabama 36601-0123

HENRY H. CADDELL, CADDH9244